Mr. Justice Robb
delivered the opinion of the Court:
Without stopping to inquire whether it was. incumbent upon the complainant, before invoking the aid of equity, to offer, so far as practicable, to place the defendant in the position it occupied when the sale was made, we pass at once to the question whether the complainant has made out such a case of fraudulent representation as to sustain the decree.
To rescind a sale upon the ground that it was induced by false and fraudulent representations, and. thus judicially brand the vendor as a fraud, is a serious matter, and a court of equity will not exercise such extraordinary power unless the evidence is of a very convincing character. “Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them.” Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. ed. 112. See also, Shappirio v. Goldberg, 20 App. D. C. 193.
*9 What were the facts in this case? The defendant offered for sale an established business. Complainant’s son interviewed Mr. Paneoast and asked him to state “the approximate profits” of the business. Mr. Paneoast did some figuring, “and after thinking he said he thought he was making $150 a month.” During a later interview between the McSweens and Paneoast, Paneoast, in response to a request that he bring a record of the business, exhibited a paper showing the average sales for three consecutive days. It is undisputed that these sales averaged about $39. The son testified that upon that occasion Paneoast said that, owing to the condition of the books, “he could not tell what the profits were, that he could only do it by a rough approximation.” While the elder McSween testified that Paneoast represented that the business was paying-$150 a month, he admitted that Paneoast made simply an approximate estimate of expenses, and that Paneoast stated that it would be impossible “to tell from the books what he was making out of each business.”
It thus appears from the evidence upon which complainant relies that Mr. Paneoast distinctly stated that, owing to the-fact that but one set of books had been kept for the three businesses, he could not tell what the profits from the café and' ice cream business were, and could only make a rough approximation. Of course, if Mr. Paneoast, notwithstanding the condition of his books, knew or had reason to know that the business which he was selling was being run at a loss, and he represented that it was being run at a profit, and the sale was induced by this representation, the complainant is entitled to relief; but the evidence, in our view, does not warrant such a conclusion. Taking the evidence of the complainant in reference to the representations inducing the sale, as a whole, it can form the basis of a finding of nothing more than that Mr. Paneoast gave expression to a mere opinion as to the condition of the business he was selling.
The allegations of misrepresentation are positively denied by Mr. Paneoast. He says that while the question as to the amount of the expenses incident to the café and ice cream *10 business was considered in a general way, he made no estimate of the profits he had been making for the reasons stated by the complainant and his son, but did suggest to them how they could run the business with less expense than the corporation. He introduced in evidence, and the record contains, the items of account from which the elder McSween reached the conclusion that the daily average receipts of the defendant during the last three months it ran the business amounted to “between $30 and $35.” Defendant’s former bookkeeper, from the same items of account, reached the conclusion, and so testified, that the average daily receipts for the same period amounted to something over $40. It is not incumbent upon this court to undertake the work of an expert accountant, for the purpose of determining whether the estimate of complainant or the statement of this bookkeeper is correct. Suffice it to say that upon the evidence before us it does not clearly appear that Mr. Pancoast’s statements concerning the receipts of the defendant were not correct, nor does the amount of defendant’s ■expenses appear. Not knowing the amount of defendant’s receipts and expenses, it is clear that we are unable to determine whether the business was being run at a profit or at a loss when this sale was made. the evidence as to the condition of the business subsequent to the sale is little better. Toung McSween testified that the average daily sales for the month of January amounted to $30, and be and bis father both testified that the loss during that month was about $150, but no figures whatever were given for the month of February. Indeed, no balance was struck.
Taking into consideration everything disclosed by the recurd, we are forced to the conclusion that complainant has not sustained the burden resting upon him. It may be that the purchase of this business was ill-advised, that complainant made a bad bargain; but that alone does not warrant the relief prayed. the question is, Was the transaction the fruit of fraudulent representations? Mere suspicion that it was is not sufficient. The evidence must leave an abiding conviction that bad faith was practised. Such a conviction does not *11 result iu this case. We are not convinced that the representations of Mr. Pancoast were untrue. Upon the whole, we incline to the belief that the very natural ambition of complain.ant to establish his son in business led to an unprofitable experiment. We cannot overlook the fact that down to the time when smallpox made its appearance in the immediate vicinity, and the closing of the café resulted, the idea that the conduct ■of Mr. Pancoast was not consistent with good faith had not taken definite form in complainant’s mind.
The decree must be reversed, with costs, and the cause remanded with directions to dismiss the bill.

Reversed and remanded.